

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                                                **609-858-9360**
**Chief Judge, United States Bankruptcy Court**

February 13, 2025

*All Interested Parties*

                     Re:      <u>Budgick v. Ascendium Education Solutions, Inc.</u>
                                    Case No.: 23-01134

Dear Mr. Budgick and Counsel:

        On December 30, 2024, the Court received a letter from Debtor Budgick in response to a Motion to Reopen (ECF No. 58) filed by Educational Credit Management Corporation ("ECMC"), which motion has since been withdrawn. The Court treated Mr. Budgick's letter (ECF No. 61) as a Motion for Sanctions against counsel for ECMC and scheduled same for a hearing. The Court has fully reviewed all submissions and considered the arguments made on the record during the February 6, 2025 hearing. For the reasons set forth below, the Court does not believe that ECMC's actions, or those of its counsel, rise to the level of sanctionable conduct. Mr. Budgick's Motion for Sanctions is DENIED.

I. **Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (J) & (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The Court issues the following findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

II. **Background**

This case has a somewhat tortured history. John William Budgick, II ("Debtor") filed for bankruptcy protection in May 2023 and commenced this adversary proceeding seeking to discharge student loans held by Ascendium Education Solutions, Inc. ("Ascendium"), which is the only defendant. On June 5, 2023, Navient Solutions filed a proof of claim on behalf of Ascendium in Debtor's bankruptcy case. The proof of claim included an address where mailings could be made and served upon Ascendium, and the record clearly establishes that Ascendium had notice of the pending adversary proceeding. Nevertheless, it declined to file an Answer or otherwise respond to Debtor's Amended Complaint. Instead, ECMC—who alleges it is a guarantor on the student loans—filed an Answer and indicated an intent to intervene in the adversary proceeding. *See Answer* n.1, ECF No. 6 ("Therefore, ECMC is the property party-in-interest in this lawsuit . . . and will be seeking to intervene in this adversary proceeding.").

Despite filing an Answer, participating during hearings, communicating with Chambers, and expressing its intent to intervene, ECMC did not file a Motion to Intervene during the pendency of the adversary proceeding. Therefore, in August 2023, the Court entered default against Ascendium and, ultimately, entered a default judgment in favor of Debtor—discharging

the student loans held by Ascendium. The Court addressed ECMC's failure to intervene in its ruling on the default judgment and left ECMC to pursue its rights; suggesting that ECMC could move to reopen the case, seek to intervene, and then seek to vacate the judgment. Instead, ECMC chose to file a Motion to Reconsider (ECF No. 37).

During the hearing on the Motion to Reconsider, the Court recounted the procedural history of the case and emphasized that Ascendium, by its own admission, was the holder of the loan at the time the bankruptcy and adversary proceeding were filed. "[A]t no time was there a notice of transfer of claim ever filed on the docket as required by the Federal Rules of Bankruptcy Procedure." *Tr. of Oct. 5, 2023 Hrg. On Mot. to Reconsider* 2:23-25, ECF No. 44. Moreover, the Court noted that ECMC had declined to file a motion to intervene despite "ample opportunity to do so[.]" *Id.* at 2:22. Given that ECMC had not demonstrated any changed facts or law that warranted reconsideration, the Court denied ECMC's motion. ECMC appealed, and the district court affirmed this Court's decision in an Opinion and Order dated May 31, 2024.

More than six months later, ECMC filed a Motion to Reopen this adversary proceeding in order to intervene. Debtor then submitted a letter, which this Court treated as a Motion for Sanctions and scheduled the matter to be heard on the same date as the hearing on ECMC's Motion to Reopen. Shortly before the scheduled hearing date, ECMC withdrew its Motion to Reopen, leaving only Debtor's Motion for Sanctions, which is the subject of this Letter Opinion.

### III. <u>Discussion</u>

While Debtor cites the Court's equitable powers under 11 U.S.C. § 105, the Court notes that other bases for issuing sanctions exist, including 18 U.S.C. § 1927, Bankruptcy Rule 9011, and the Court's inherent powers.

In order to impose sanctions under § 1927, the statute requires a court to find that "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). Here, the Court is unable to find the requisite willful bad faith or intentional misconduct. While the Court may have been inclined to find the Motion to Reopen without merit, it appears that there may have existed a lack of understanding by ECMC. Specifically, ECMC expressed confusion regarding the wording of the Default Judgment (ECF No. 34) and its effect on the debt allegedly owned by ECMC. *See, e.g. Motion to Reopen* ¶13-15, ECF No. 58-1.[1] Additionally—and significantly—the Court does not find any indication that Counsel's actions in filing the Motion to Reopen were done for any other improper purpose, such as harassment. Finally, the Court notes that ECMC withdrew its motion. Thus, sanctions under § 1927 are not warranted.

The Third Circuit instructs that sanctions should be imposed under Bankruptcy Rule 9011(c) only in egregious circumstances, where a party has engaged in "objectively unreasonable conduct." *In re Amoroso*, 123 F. App'x 43, 47(3d Cir. 2004); *see also, e.g. In re Bradley*, 2024 WL 1389123, at *10 (M.D. Pa. Apr. 1, 2024). The Court finds that ECMC's motion is an attempt to obtain both clarity regarding the effect of the Default Judgment and a ruling on the merits of its claim. Indeed, a timely-filed motion to intervene may have resulted in a favorable ruling, allowing this Court to address ECMC's contentions and render a ruling on the merits as opposed to a default judgment. In ruling on the Motion to Reconsider, the Court advised that this strategy was available

---

[1] For purposes of clarity, the outstanding student loan obligations held by Ascendium at the time the petition was filed and specifically referenced in its proof of claim—which subsequently may have been assigned to ECMC—are discharged by way of the Default Judgment. Any actions to collect on the discharged loans would constitute a violation of the discharge injunction and, should such action occur, the Court would revisit the possibility of sanctions at that time.

as a means for ECMC to pursue its rights. Although it declined to do so at that time, ECMC eventually commenced that course of action by filing the Motion to Reopen. This Court is unwilling to find that the delayed motion is so objectively unreasonable as to warrant sanctions under Bankruptcy Rule 9011.

Similarly, the Court declines to impose sanctions under its inherent or § 105 equitable powers. Notably, a court's inherent power to sanction should generally "be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). Again, while Debtor argues that ECMC's motion has no merit, the filing of a meritless motion—without more—is not egregious or sanctionable conduct. As discussed, the Court perceives no bad faith, and does not believe that ECMC filed this motion for oppressive reasons. Accordingly, the Court declines to impose sanctions under its inherent power or using the equitable powers afforded under § 105.

Admittedly, the filing of the Motion to Reopen caused the parties and the Court to expend resources. However, the Court regularly addresses and denies motions as lacking legal and/or factual support; therefore, the Court views the time and effort spent doing so in this case simply as a regular function of the Court. Debtor likewise expended time and effort in supporting his motion and defending against ECMC's motion. However, the Court notes that the extent of his efforts—including voluminous filings, and multiple emails and other correspondence—were compounded by his own choice and actions. Debtor was informed that he could file a response to ECMC's motion, and he was aware of the procedure to properly do so. However, in addition to opposing the Motion, Debtor chose also to take other actions, which he believed would further protect his rights, and which—for the most part—he was permitted to do by law. Nevertheless, the Court will not hold Counsel responsible for excessive work that Debtor undertook of his own

volition. In point of fact, this Court spent far more time reading Debtor's 88-page supplement and responding to Debtor's emails—many of which were irrelevant to the pending issues—than it did in preparing to rule on the underlying motion filed by ECMC.

On the topic of Debtor's submissions, the Court takes this opportunity to address some of Debtor's concerns and to respond to certain comments, so that the record is clear, and so that he has a better understanding and appreciation for these proceedings.

As an initial matter, the Court has not engaged in any misconduct and explicitly rejects Debtor's allegations on this point. There have been no improper *ex parte* communications in this case. Debtor's reference to conversations between Judge Ferguson's Chambers and Mr. Baum involved scheduling issues of which Debtor was subsequently informed. This is neither irregular nor inappropriate. Moreover, it appears that Debtor is confused regarding what constitutes *ex parte* communications. In sum, it refers to substantive conversations *with the Court* to which other parties in the case are not privy. Despite being cautioned against this type of communication by several Court employees, Debtor has willfully failed to copy counsel for ECMC on numerous substantive communications and the Court was compelled to forward same to Counsel. Additionally, throughout his submission, Debtor complains that Mr. Baum engaged in improper *ex parte* communications by reaching out to him without copying the Court. To clarify, this is neither uncommon nor improper. *Ex parte* communications are those directed at the Court. In contrast, parties are permitted to—and encouraged to—engage with each other in what Debtor refers to as "informal, off-record" communications, and often do so—as Mr. Baum did here—to obtain consent and/or to engage in settlement negotiations. Indeed, the Court should not be copied on those types of communications.

Debtor expresses confusion and frustration with the Court because a PreTrial hearing was scheduled in this case, and he cites Court staff by name. It is evident from Debtor's pleadings that he confuses a "PreTrial Hearing"—which sets the dates and deadlines in a case going forward—with a "Mediation"—in which the parties to attempt to consensually resolve their issues. Debtor uses the term "Pre-Trial Mediation." Court employees advised Debtor that a PreTrial Hearing is set in every case and that information was accurate. While "Mediation" may not be mandatory in all cases, a PreTrial Hearing is required. *See, e.g., 2015 Comment to LBR 7016-1* ("The date for the pretrial conference is set in the summons issued by the clerk when the adversary proceeding is initiated.").

In his submission, Debtor also focuses on the way documents are labeled on the docket and suggests—at several points—either intentional misconduct on the Court's part, collusion with other parties, or Court negligence. Again, the Court assures Debtor that it is the substance of the documents—rather than the label—that is determinative. While it is certainly helpful if the title of a document accurately reflects its contents, the title alone does not afford any party an advantage over any other party. Moreover, the Court often must glean the intent behind pleadings filed by self-represented individuals such as Debtor, who are not familiar with the law. It does so in an effort to assist litigants. Debtor cites instances where he was dissatisfied with a label or how a document was interpreted and he suggests, at best, mistake and, at worst, intentional misconduct on the Court's part. The Court rejects any such allegations and declines to entertain his arguments regarding the impact of document labels on alleged futuristic "AI supported case management software" that is not utilized by the Court.

Debtor again points to the time lapse between the District Court's Order on appeal and the closure of the adversary proceeding in his case. He refers to this period as a "delay," claims it is

"unusual," and suggests it is "deliberate manipulation" that ignored the District Court's directive. As an initial matter, the District Court's Order does not direct the closure of the adversary proceeding. Rather, that Order affirms this Court's decision, and directs the Clerk to close the appellate case. *See Order & Judgment*, ECF No. 24 in Case No. 23-cv-21341. Moreover, as this Court previously informed Debtor, the closure of a case in bankruptcy court is an administrative function and is the result of internal reviews. The relevant date for litigants' purposes is the date of judgment, which in this case was August 31, 2023.

Debtor also refers to what he calls "systemic privileges," and he suggests that the Court has allowed other attorneys to bypass procedural safeguards or has given them more favorable treatment. These allegations are unfounded. For example, he complains that while he was informed that submissions to the Court cannot be made by email, the Court placed an email from the Department of Justice on the record. This was done as a courtesy—not only to the Department of Justice who was not a proper party—but to Debtor, whose case benefited from this information becoming part of the record. Moreover, Debtor ignores the fact that this Court has extended this courtesy to Debtor in the past.

Ultimately, Debtor raises more unfounded allegations to which this Court cares to respond. This Court wishes to emphasize that it has handled this case properly and like it would any other case—with respect and fair treatment for all the litigants involved, and with deference to the facts of the case and the applicable law. Debtor, in fact, succeeded in his adversary proceeding.

Finally, this Court briefly responds to Debtor's criminal allegations—including claims of conspiracy, RICO violations, and obstruction of justice. Simply put, this Court is without authority to address them, or to conduct an investigation into Amazon or "AWS's" involvement. This is a bankruptcy court and the issue before the Court in this case involved the dischargeability of a debt.

The Court made its determination, and the case is over. Allegations of criminal activity are outside the scope of this case, and beyond the purview of this Court. They may be raised with the appropriate authorities.

### IV.     Conclusion

For the foregoing reasons, Debtor's Motion for Sanctions (ECF No. 61) is DENIED. The Court will enter an appropriate Order.

*Michael B. Kaplan*
Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Cc: Filed on CM/ECF